UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO,
DARIN JEFFEERS, MICHAEL O'TOOLE, MICHAEL
BOURGAL, FRANK H. FINKEL, JOSEPH A.
FERRARA, SR., MARC HERBST, THOMAS
CORBETT and ROBERT G. WESSELS, as Trustees
and fiduciaries of the Local 282 Pension Trust Fund,

                  Plaintiffs

  -against-                            **REPORT AND**
                                             **RECOMMENDATION**
                                             20-CV-2129 (ENV)(AYS)

NASTASI & ASSOCIATES, INC., John and
Jane Does 1-10 and XYZ Entities 1-10 whose
true names are unknown, constitutuing a
Control group or alter ego or single employer
business entities or individuals of Nastasi &
Associates, Inc.,

                  Defendants.
---------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

Plaintiffs, the Trustees ("Plaintiffs" or the "Trustees") of the Local 282 Pension Trust Fund (the "Pension Fund"), commenced this action on May 11, 2020 against Defendant Nastasi & Associates, Inc. ("Defendant" or "Nastasi"), as well as various John and Jane Doe individuals and XYZ entities, pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPAAA"), 29 U.S.C. §§ 1381 et seq., and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"). 29 U.S.C. § 185, for unpaid withdrawal liability that Nastasi incurred as a result of its permanent cessation of operations in or about March 2015, which resulted in the cessation of Nastasi's obligation to contribute to the Pension Fund. See generally Compl., Docket Entry ("DE") [1].

1

Nastasi has failed to answer the Complaint or otherwise appear in this action. On July 8, 2020, Plaintiffs filed a request for a certificate of default from the Clerk of the Court, DE [9], which was granted on July 13, 2020. DE [10]. On October 23, 2020. Plaintiffs filed the within motion for a default judgment, which was referred to the undersigned by the Honorable Eric N. Vitaliano on October 27, 2020, for a recommendation as to whether the motion should be granted and what, if any, damages should be awarded. For the following reasons, this Court respectfully recommends that Plaintiffs' motion be granted in its entirety.

## BACKGROUND

Plaintiffs are trustees of the Pension Fund, which is maintained pursuant to the terms of the Amended and Restated Agreement and declaration of Truste (the "Trust Agreement") to collect and receive contributions and provide benefits to eligible participants and their beneficiaries. Trust Agreement, DE [14-1]; Compl. ¶ 10. At all relevant times, Defendant has been a party to or otherwise bound by a collective bargaining agreement (the "CBA") with Building Material Teamsters Local 282, IBT (the "Union"), which requires covered employers to contribute to the Pension Fund on behalf of workers covered by such agreements and to pay withdrawal liability when an employer withdraws from the Pension Fund. Compl. ¶ 9. The Pension Fund is a third-party beneficiary of the CBA. Compl. ¶ 12.

As of March 2015, Nastasi permanently ceased covered operations under the CBA and as result, ceased to have an obligation to remit contributions to the Pension Fund. Compl. ¶ 26. Pursuant to Section 4203 of ERISA, 29 U.S.C. § 1383(a), such permanent cessation of all contributions and operations constitutes a "complete withdrawal" from the Pension Fund. Compl. ¶ 27. On or about March 7, 2019, the Pension Fund sent Nastasi an Initial Notice of Actual Withdrawal, which, in accordance with ERISA and the Trust Agreement, calculated

Nastasi's withdrawal liability to be $220,748.00. Compl. ¶¶ 28-29.

By letter dated March 7, 2019, the Pension Fund sent Nastasi a written Notice and Demand for Payment of Withdrawal Liability ("Notice and Demand"), which advised Nastasi that it could remit its' withdrawal liability in 182 consecutive monthly payments of $1,938.01 per month. Compl. ¶ 30. The Notice and Demand also directed Nastasi to Section 4219 of ERISA, 29 U.S.C. § 1399, for a description of the rights Nastasi might have in connection with the Pension Fund's assessment of withdrawal liability. Id. Nastasi failed to remit the withdrawal liability installment by April 1, 2019. Compl. ¶ 31. Nastasi also failed to challenge the Pension Funds assessment of withdrawal liability. Compl. ¶ 35.

As a result of Nastasi's nonpayment, the Pension Fund sent a Notice of Default dated June 6, 2019, demanding cure within sixty days. Compl. ¶ 32. To date, Nastasi has failed to make any payments of the withdrawal liability due and owing.

## DISCUSSION

I. Legal Principles

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d. Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. See Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. See id.

Where a default occurs, the well-pleaded factual allegations set forth in the Complaint are deemed to be true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not

3

denied."). However, "[i]t is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court." Allstate Ins. Co. v. Howell, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Ferrara v. Tire Shop Ctr., No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015). Accordingly, the court must determine whether a plaintiff's allegations establish liability as a matter of law. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law.") (internal quotation omitted).

II. Liability

Pursuant to Section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall ... make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; see also LaBarbera v. J.D. Collyer Equip. Corp., 337 F.3d 132, 134 (2d Cir. 2003). In addition, Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees...." 29 U.S.C. § 185(a). Here, Section 4201 of ERISA and the Trust Agreement require Nastasi to pay withdrawal liability to the Pension Fund for its

4

proportionate share of the Pension Fund's unfunded vested benefits. Compl. ¶ 34. Plaintiffs allege in the Complaint that, despite being informed of the outstanding withdrawal liability due and owing, Nastasi has failed to make any payments, despite Plaintiffs' demands that it do so. Compl. ¶¶ 30-35. Based on these allegations, as well as the Declaration of the Fund Administrator, Mario Bulding, which substantiates these allegations, the Court concludes that there is a basis for liability for violations of ERISA and the LMRA based on Defendant's breach of the CBA and Trust Agreement. Accordingly, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted.

III. Damages

Although a default judgment entered on the well-pleaded allegations in a complaint establishes a defendant's liability, a plaintiff must still prove damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Credit Lyonnai Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Plaintiffs herein seek unpaid withdrawal liability, interest and liquidated damages, as specified in ERISA, as well as attorney's fees and costs.

A. Unpaid Withdrawal Liability

Pursuant to Section 4201 of ERISA, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined ... to be the withdrawal liability." 29 U.S.C. § 1381. As demonstrated by the allegations of the Complaint and the Declaration of Mario Bulding, the Pension Fund calculated Nastasi's withdrawal liability, in accordance with the provisions of ERISA, to be $220,748.00. Nastasi took no action to challenge this assessment. Accordingly, this Court recommends that Plaintiffs be awarded $220,748.00 in damages representing Nastasi's unpaid

5

withdrawal liability.

   B.   Interest

Section 502(g)(2)(B) of ERISA mandates an award of interest on unpaid contributions. See 29 U.S.C. § 1132(g)(2)(B). Pursuant to Article IX, Section 3 of the Trust Agreement, Nastasi is required to pay interest at a rate of 1.5% per month on the outstanding withdrawal liability from August 5, 2019 through the date of judgment in this action. Smith Decl., DE [13], ¶ 12; Bulding Decl., DE [14], ¶ 16. As of October 12, 2020, the amount of interest due and owing was $47,246.05, with additional interest accruing at a rate of $108.86 per day. Smith Decl. ¶ 12. As of the date of this Report and Recommendation, the amount of interest due and owing since October 12, 2020 is an additional $13,825.22 (127days × $108.86/day). Accordingly, the total amount of interest due and owing since August 5, 2019 is $61,071.27. This Court respectfully recommends that Plaintiffs be awarded $61,071.27 in interest through the date of this Report and Recommendation, as well as additional interest to be calculated at a rate of $108.86 per day through the date of judgment herein.

   C.   Liquidated Damages

Both the Trust Agreement and Section 502(g)(2)(C) of ERISA provide for an award of statutory liquidated damages equal to the greater of: (1) interest on unpaid contributions, or (2) liquidated damages, so long as such damages do not exceed twenty percent (20%) of the unpaid contributions. See 29 U.S.C. § 1132(g)(2)(C). Here, Plaintiffs have elected to recover additional interest since the amount of interest is greater than twenty percent of the unpaid withdrawal liability. Smith Decl. ¶ 13; Bulding Decl. ¶ 17.

As Plaintiffs have demonstrated their right to recover liquidated damages, this Court respectfully recommends that liquidated damages be awarded in an amount equal to the amount

6

of interest due and owing in this action.

IV.     Attorney's Fees and Costs

Both the Trust Agreement and ERISA entitle Plaintiffs to recover reasonable attorney's fees and costs. Plaintiffs seek $7,587.50 in attorney's fees and $884.15 in costs.

    A.      Attorney's Fees

As a general matter when determining attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court has held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (emphasis in original). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill, 522 F.3d at 190-91 (holding that a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

The reasonableness of hourly rates is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney who worked on the action. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." Perdue, 559 U.S. at 552.

Here, Plaintiffs seek to recover $7,587.50 in attorney's fees and have submitted the Declaration of Christopher A. Smith, dated October 14, 2020, and contemporaneous billing records in support of their application. Smith Decl., DE [13]. Plaintiffs seek reimbursement for services rendered by attorneys Christopher A. Smith, Scott Trivella, Arthur Muller and Kevin King, as well as paralegals Michelle Salerno and Anna Chiarolanza, at hourly rates of $450 for Mr. Smith and Mr. Trivella, $410 for Mr. Muller and $120 for all remaining individuals. Smith Decl. ¶ 15 and Ex.5, DE [13-5], annexed thereto. The time spent on this action by counsel and its staff totals 22.30 hours. Smith Decl., Ex. 5.

Plaintiffs' submission adequately sets forth the background and experience of each of the attorneys and paralegals who billed time on this action. Moreover, as stated above, Plaintiffs' application is supported by contemporaneous time records that detail the tasks the attorneys and the paralegals performed in connection with this action, as well as the time expended on each

8

task. Smith Decl., Ex. 5. Having reviewed the documents submitted, this Court finds both the number of hours expended and the hourly rates to be reasonable. See Gesualdi v. Tadco Constr.Corp., No. 19-CV-5606 (JS) (AYS), 2021 WL 260564, at *4 (E.D.N.Y. Jan. 5, 2021), adopted by, 2021 WL 260094 (E.D.N.Y. Jan. 26, 2021); see also Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2013 WL 1760134, at *4 (E.D.N.Y. Apr. 24, 2013) ("In the Eastern District of New York, depending on the nature of the action, extent of legal services provided and experience of the attorney, hourly rates range from approximately $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates.") (collecting cases). Accordingly, the Court respectfully recommends that Plaintiffs be awarded $7,587.50 in attorney's fees.

B.      Costs and Disbursements

Plaintiffs also seek a total of $884.15 in costs and disbursements in connection with the instant action. Smith Decl. ¶ 16. These costs are comprised of: (1) $400.00 for the court filing fee; (2) $446.25 for process server fees; and, (3) $37.90 in postage and mailing services. Smith Decl., Ex. 6.

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)). The costs for which Plaintiffs seek to recover are those ordinarily associated with litigation and this Court finds them to be reasonable. Accordingly, the Court respectfully recommends that Plaintiffs' be awarded $884.15 in costs and disbursements.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for default judgment, appearing at Docket Entry 12 herein, be granted, and that Plaintiffs be awarded the following: (1) $220,748.00 in unpaid withdrawal liability; (2) interest, through the date of this Report and Recommendation, in the amount of $61,071.27, with additional interest to be calculated at a rate of $108.86 per day through the date of judgment herein; (3) liquidated damages equal to the amount of interest awarded herein; (4) attorney's fees in the amount of $7,587.50; and, (5) $884.15 in costs.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiffs. Further, this Court is directing Plaintiffs to serve a copy of this Report and Recommendation on Defendant at its last known address(es) and to file proof of service on ECF by February 18, 2021. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service of this report. See 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court of Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Dated: Central Islip, New York
      February 16, 2021

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge